**STEPHENS**

v.

**FEDERAL SECURITY ADMIN-ISTRATOR.**

**Civ. A. No. 841–D.**

United States District Court
E. D. Illinois.
Aug. 2, 1949.

Harold A. Craig, Danville, Ill., for plaintiff.

William W. Hart, Benton, Ill., Ray M. Foreman, Danville, Ill., for Federal Sec. Adm'r.

LINDLEY, Judge.

The complaint in this case seeks a reversal of defendant's decision that plaintiff is not entitled to Child's Insurance Benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq. The facts are not in dispute. Plaintiff is the child of Iris Ray Stephens and Mary Jane Osborn, who were married May 16, 1942, in Danville, Illinois, and divorced on October 14, 1946, at Fort Wayne, Indiana. The divorce decree granted custody of plaintiff, who was then only 3½ years old, to the mother, but ordered that Iris Ray Stephens "provide support for said minor child." Stephens did not comply with the order and, because she did not know where he might be found, the child's mother was unable to compel him to do so. Consequently, from the time of the divorce until her remarriage in December of 1947, plaintiff was supported by his mother, who returned to Danville and obtained employment in a candy factory. Since her marriage to Earl H. Osborn, plaintiff's mother has not been employed, and both she and plaintiff have lived with Mr. Osborn in a home provided by him.

On February 12, 1948, Iris Ray Stephens was killed, and Mrs. Osborn, after having been appointed guardian of plaintiff's estate, received, in August of that year, some $1,100 as plaintiff's share of his father's estate. In October, she procured a court order authorizing her, as guardian, to pay herself $5 each week, out of plaintiff's estate, for the support of plaintiff.

Meanwhile, Mrs. Osborn was notified that the claim filed by her on behalf of plaintiff, under Title II of the Social Security Act, based on the wages of the plaintiff's deceased father, had been disallowed by the Bureau of Old-Age and Survivors Insurance, because of its determination that the child was not dependent on his father at the time of the father's death. Mrs. Osborn then requested and obtained a hearing before a Referee of the Social Security Administration. The hearing was held November 23, 1948, and the Referee decided "that claimant is not entitled to benefits on behalf of the child James Ray Stephens for the reason that the child was not dependent on the wage earner Iris Ray Stephens at the time of the latter's death." The Appeals Council having refused a review of the referee's decision, this suit was begun pursuant to the provisions of section 205 (g) of the Social Security Act, 42 U.S. C.A. § 405(g).

Both plaintiff and defendant have filed motions for summary judgment in accord with Federal Rule of Procedure 56, 28 U.S.C.A., alleging that there are no issues of fact and that the only question is one of law—i. e., whether, upon the undisputed facts, plaintiff was or was not "dependent upon" Iris Ray Stephens, within the meaning of the Social Security Act, at the time of the latter's death. The Act, section 202(c)(3), provides that "A child shall be deemed dependent upon a father * * * or to have been dependent upon such individual * * * unless, at the time of * * * death * * * such individual was not living with or contributing to the support of such child and * * * (C) such child was living with and was chiefly supported by such child's stepfather." Here, at the time of his death, the father was not living with or contributing to the support of plaintiff, who was living with and being supported by his stepfather. In such a situation, the language of the Act would seem to demand a finding that plaintiff was not dependent upon his father so as to be entitled to monthly benefits based upon the latter's wages. However it is argued that the existence of a court order obligating the father to support the plaintiff, although never complied with, in combination with the absence of any legal duty on the part of the stepfather to provide such support, requires a different construction of the Act as to this plaintiff.

Even in the absence of the support order included in the divorce decree, there can be no doubt that the father was under a legal obligation to support his minor child and that plaintiff was a

legal dependent of his father, but it does not follow that plaintiff was, in fact, dependent upon his father. Congress apparently used the language "dependent upon" because it contemplated that Survivor's Insurance benefits should be made available only to those children who had been, in fact, dependent upon a deceased wage earner, children who, as a result of the death of the wage earner, were deprived of one who had actually provided for them prior to his death. To construe now "dependent upon" as the equivalent of "a legal dependent of" would be to substitute a new legal concept for the practical test of dependency expressed by Congress. As a judge I am not justified in revising the Act of Congress.

Plaintiff argues that Section 209(n) of the Act, which provides that "a wife shall be deemed to be living with her husband if * * * he has been ordered by any court to contribute to her support", indicates that Congress intended that a court order to support should be equivalent to actually providing support, not only for the purposes of that section but for those of Section 202(c)(3) as well. Otherwise, plaintiff says, the Act accords to wives and widows a favored position at the expense of orphaned children.

█ Unfortunately I can not adopt this construction of the two sections. The Act provides that a widow shall receive benefits on the basis of her deceased husband's wages if (1) he and she were members of the same household at the time of his death, or (2) he was contributing to her support at the time of his death, or (3) had been ordered by a court to do so, Sections 202(d) and (e), 209(n). With respect to a child, none of these conditions is imposed; the child is entitled to benefits, unless (1) he has been adopted by someone else or (2) he is living with and being supported by his stepfather, Section 202(c)(3). The existence or non-existence of a court order to provide support for the child is immaterial; if the child has not been adopted or is not living with and being supported by his stepfather, he will receive benefits based on his deceased father's wages regardless of the presence or absence of a court order for support, but if he has been adopted or is living with and being supported by his stepfather, he will not, for he has suffered no such economic loss as was made compensable by the Act.

Plaintiff's next contention is that he was not being chiefly supported by his stepfather, within the meaning of the Act, at the time of his father's death. Because a stepchild acquires no right to benefits based on the stepfather's wages until the step relationship has existed for 12 months, it is suggested that one is not a stepfather, for the purposes of Section 202(c)(3), unless, on his death, the stepchild would be entitled to benefits based on his wages. For the same reason it is argued that, in determining whether a child was dependent upon his deceased father or was being chiefly supported by his stepfather, a period of at least 12 months prior to the death of the natural father must be taken into account. And finally, it is pointed out that, although plaintiff's stepfather did, in fact, provide plaintiff's entire support for some 50 days prior to the death of plaintiff's father and for several months thereafter, he has never been under a legal duty or has never accepted the responsibility for supporting plaintiff and could decline to provide further support at any time. Properly to protect plaintiff against such a contingency, it is contended that "chiefly supported by such child's stepfather" should be construed to mean "when the obligation to support the child has been assumed by such child's stepfather."

█ I regret that there is no reasonable basis for construing the Act as plaintiff would have it. In the absence of a clearly expressed intent to the contrary, the words "stepfather" and "stepchild" must be given their normal meanings. The Act clearly provides for a time-of-death test in the determination

of whether the child was dependent upon the deceased father or was being chiefly supported by his stepfather. Although this provision is not to be construed as limiting the Bureau to a consideration of the facts existing at the instant of death, neither it nor anything else in the Act requires the use of any specified period of time in making the determination. Here the step relationship had existed for just 50 days prior to the death of plaintiff's father; it was this, and not some arbitrary rule of the defendant, that compelled both the Bureau and the Referee to base their findings on the facts as they existed in that period, for evidence with respect to the situation of plaintiff prior to the inception of the step relationship could have no relevancy to the question they were to decide. Finally, the Act does not call for an inquiry into the state of mind of the stepfather who has provided support for his stepchild; whether he has or has not accepted the responsibility to support him or does or does not have a legal duty to do so is immaterial in determining whether, at the time of the natural father's death, the child was, in fact, being chiefly supported by his stepfather.

Since plaintiff would have been entitled to benefits if his father had died the day before his mother remarried, it is argued that her remarriage, an act over which he had no control, should not deprive him of the right to receive the benefits to which he would otherwise have been entitled. However, it was not his mother's remarriage that caused the disallowance of plaintiff's claim; it was the fact that his stepfather was supporting him at the time of his father's death that led to that result. A minor child's entitlement to benefits under the Act is not dependent on any overt acts he may or may not have done, but on the existence or non-existence of an economic relationship which has been terminated by the death of the wage earner. Here, at the time of the wage earner's death, the necessary relationship was lacking and plaintiff's claim was properly disallowed.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted and the complaint dismissed.

The foregoing includes my findings of fact and conclusions of law.